IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

S. H.,[1]

           Plaintiff,

v.                                              Case No. 21-1016-JWB

COMMISSIONER OF SOCIAL SECURITY,
*Kilolo Kijakazi, Acting Commissioner*,

           Defendant.

## MEMORANDUM AND ORDER

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits and supplemental security income.  Plaintiff and the Commissioner have each filed a brief.  (Doc. 13, 18.) The time allowed for further briefing has expired and the matter is accordingly ripe for decision.  For the reasons stated herein, the decision of the Commissioner is AFFIRMED.

### I.  Standard of Review

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied

---

[1] Plaintiff's initials are used to protect privacy interests.

by such evidence as a reasonable mind might accept as adequate to support the conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that she is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that she has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 751. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(iv), 20 C.F.R. § 416.945. The RFC represents the most that the claimant can still do in a work setting despite her impairments. *See Cooksey v. Colvin*, 605 F. App'x 735, 738 (10th Cir. 2015). The RFC assessment is used to evaluate the claim at both step four and step five. §

416.920(e), (f), (g).  At step four, the agency must determine whether the claimant can perform previous work.  If a claimant shows that she cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.  *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).

The claimant bears the burden of proof through step four of the analysis.  *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  *Thompson*, 987 F.2d at 1487 (citations omitted).

## II.  Background and Procedural History

Plaintiff protectively filed[2] applications for Title II disability insurance benefits and Title XVI supplemental security income on January 22, 2019, alleging a disability onset date of February 16, 2017.  The claims were denied administratively both initially and upon reconsideration.  Plaintiff subsequently requested an evidentiary hearing before an Administrative Law Judge (ALJ).  (*See* Tr. at 10.[3])

On August 18, 2020, ALJ Michael Werner held a telephonic hearing and heard testimony from Plaintiff and vocational expert (VE) Karen Terrill.  At the hearing Plaintiff amended the alleged onset date of disability to December 7, 2018.  (*Id.* at 40.)  Plaintiff testified, among other things, that she was born in 1978 (making her 40 years old at the alleged onset date); that she had

---

[2] The protective filing date is the date an individual contacts the Social Security Administration with the stated intention of filing for disability benefits.  In some circumstances it will be considered the application filing date even if it precedes the Administration's receipt of a signed application.  *See* 20 C.F.R. § 416.340; 20 C.F.R. § 416.345.

[3] Citations to "Tr." refer to the Bates' numbering in the administrative transcript. (Doc. 12.)

a high school education and a certificate in cosmetology; that she previously could lift a maximum of 70 pounds and routinely lifted 50 pounds in her prior work as a custodian but now she was unable to do so because of pain; that her current height and weight were 5'4" and 263 pounds; that she experiences constant back pain; that she has pain in her knees particularly when she bends, moves, or twists and has pain when lifting her arms; that she can only stand about 8-15 minutes and then has to sit or lay down; that she is constantly sitting but after 15 minutes has to get up and move, and by three or four o'clock in the afternoon has to lay down; that she can carry the weight of a gallon of milk but not much more; that she has to lay down 8-10 times a day; that she cannot really drive because her medication makes it difficult to think and gives her hallucinations; that she uses a cane outside of the house because her balance is off; and that she suffers from depression. (*Id.* at 41-16.)

The ALJ denied Plaintiff's application on September 1, 2020. (*Id.* at 7.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (*Id*. at 12.) At step two, the ALJ found Plaintiff suffers from the following severe impairments: lumbar spine degenerative disc disease; degenerative joint disease of the right knee; obesity; fibromyalgia; and depressive disorder. (*Id.*) At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled any of the presumptively disabling impairments listed in the regulations.

The ALJ next determined that Plaintiff has the RFC to perform sedentary work as defined in the regulations except that Plaintiff: can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently; can sit with normal breaks for a total of 6 hours of an 8-hour workday; can stand and/or walk with normal breaks for a total of 2 hours of an 8-hour workday; can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds; can occasionally balance, stoop,

kneel, crouch and crawl; can tolerate occasional exposure to extreme cold, extreme heat, vibrations, and hazards such as unprotected heights and moving mechanical parts; can understand, remember, and apply instructions to perform simple tasks (jobs SVP 2 and below); can make work decisions commensurate with the foregoing tasks; can concentrate to work at a consistent pace for two-hour periods before and after customary breaks; can tolerate occasional interactions with coworkers and the public; and can adapt to changes in a work environment with these limitations. (*Id.* at 15.)

At step four, the ALJ determined that Plaintiff was unable to perform any of her past relevant work as a lead custodian or office clerk.  (*Id.* at 18.)  Finally, at step five, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff is capable of performing jobs that exist in significant numbers in the national economy.  (*Id.* at 19.) In so finding, the ALJ credited the VE's testimony that an individual with Plaintiff's RFC could perform the occupations of lens inserter (DOT 713.687-026), wafer breaker, semi-conductor (DOT 726.687-046), and loader of semi-conductor dies (DOT 726.687-030), all of which had an SVP 2 and sedentary rating.  (*Id.*)  The ALJ accordingly determined Plaintiff was not under a disability within the meaning of the Social Security Act.

### III. Analysis

Plaintiff's sole argument on appeal is that the ALJ failed to provide a physical RFC supported by substantial evidence.  (Doc. 13 at 7.)  Plaintiff contends the ALJ mischaracterized Plaintiff's ability to perform activities of daily living and failed to explain how the evidence supported the physical RFC.  (*Id.* at 9-11.)  Plaintiff relies on a medical source statement of P.A. Virginia King, who opined among other things that Plaintiff: could only sit 10 minutes at a time without changing position and for less than 2 hours of an 8-hour day; could only stand for 10

minutes at a time without changing position and for less than 2 hours of an 8-hour day; needed two unscheduled breaks per hour or more and would need to rest 30 minutes before resuming work; needed to elevate her legs 50% of an 8-hour day; was incapable of low stress work; and on average would miss more than 4 days per month of work.  (Tr. at 677-79.)   Plaintiff argues there was evidence supporting these opinions, and that "[i]t was unclear how the ALJ reached the RFC conclusions based on the reasoning contained in the [ALJ's] decision and in light of PA King's well-supported medical opinion."  (Doc. 13 at 13.)

These arguments might be more persuasive if the court were the finder of fact operating under a de novo standard of review.  But they are ultimately unavailing because "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The question is not whether there is any evidence that could sustain a finding of disability; it is whether there is substantial evidence to support the ALJ's findings.  After reviewing the ALJ's decision and the record, the court concludes the ALJ's RFC determination is supported by substantial evidence.

The ALJ's decision acknowledged and addressed Plaintiff's physical impairments, including lumbar spine degenerative disc disease, degenerative joint disease of the right knee, and fibromyalgia.  (Tr. at 16.)  The ALJ further considered Plaintiff's various reported symptoms, including that she experiences pain when sitting, that she is not able to stand for long periods, and that she has fatigue and other symptoms due to constant pain.  (*Id*.)  The ALJ found Plaintiff's impairments could reasonably be expected to cause her symptoms but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were "not entirely consistent with the medical evidence and other evidence in the record…."  (*Id*.)  The ALJ's decision recounted some of the evidence relating to these symptoms, including evidence that

supported them as well as evidence indicating the symptoms were not as severe as reported.  For example, the ALJ discussed a June 2019 consultative exam by Darya Collins, NP, who among other things reported that Plaintiff exhibited a steady gait, exhibited full strength in her muscles, had no muscle spasms, showed normal limits and normal reflexes on a sensory exam, and exhibited no more than moderate difficulty on orthopedic maneuvers.  (*Id.* at 17.)  That same report included findings that Plaintiff exhibited normal speech and mood, had clear thought processes and normal memory and concentration; did not present with an assistive device for walking; exhibited full muscle strength in all areas examined; had tenderness in the back, hip, knee, and buttock but exhibited no joint erythema, effusion, or deformity; could button and unbutton a shirt, pick up and grasp a pen and write a sentence; could lift, carry, and handle personal belongings; was able to rise from a sitting position without assistance and, with some difficulty, get up and down from the exam table; could walk on heels and toes with moderate difficulty; could dress and undress adequately well; and tandem walking was normal and she could stand but not hop on one foot bilaterally.  (*Id.* at 662-63.)

The ALJ's decision cited additional evidence in support of the RFC findings.  It noted evidence that despite Plaintiff's limitations, she was able to tolerate trips to South Dakota and Washington by air travel.  (*Id.* at 16.)  The ALJ recognized objective medical findings supporting Plaintiff's claims of pain but also considered evidence that Plaintiff had been observed to have a slow but stable, normal gait and could walk short distances, noted that her claims of pain were not entirely consistent, and pointed out that she remained able to ride her bicycle and assist her parents with gardening.  (*Id.* at 17.)  The ALJ also considered the various medical opinions in the record, including those of P.A. King.  The ALJ found King's opinions on Plaintiff's limitations (such as only being able to sit for 10 minutes at a time, needing to elevate her legs 50% of the time, and

needing two unscheduled breaks every hour with a 30-minute rest) unpersuasive, noting these severe limitations were not well-explained and were not consistent with Plaintiff's level of activity that included traveling, reading, and doing crafts.  (*Id.* at 18.)  There was nothing improper or inadequate in the manner in which the ALJ assessed the persuasiveness of King's opinions.  Under the regulations, an ALJ is required to consider the persuasiveness of a medical opinion using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as "a medical source's familiarity with the other evidence in a claim."  20 C.F.R. § 404.1520c(c); *id*. § 416.920c(c).  "The factors of supportability … and consistency … are the most important factors" in determining persuasiveness.  *Id.* § 404.1520c(a).  The ALJ followed that framework here, noting the lack of support or explanation for the limitations indicated by King, and citing other medical opinions that were inconsistent with those limitations.  Among others, the ALJ cited the medical opinion of Mary Tawadros, M.D., who opined that Plaintiff could stand or walk for a total of 4 hours of an 8-hour workday, could sit for a total of 6 hours in a workday, and said that Plaintiff's alleged limitations in her physical activities exceeded the documented medical findings such as mild degenerative disc disease.  (*Id.* at 107.)  The ALJ also considered the assessment of Crystalla Daly, D.O., who likewise opined that Plaintiff was capable of standing and/or walking 4 hours and sitting 6 hours in an 8-hour workday.  (*Id.* at 142.)

The ALJ considered the record, weighed evidence relating to the severity of Plaintiff's symptoms, and concluded Plaintiff was capable of performing the RFC outlined in the ALJ's opinion.  In doing so the ALJ found the opinions of Drs. Tawadros and Daly "generally persuasive" because they were more consistent with physical examinations and imaging than were Plaintiff's reported pain symptoms.  (*Id.* at 18.)  In support of his findings, the ALJ cited medical opinions, objective examinations, and testimony concerning Plaintiff's activities of daily living.  Substantial

evidence requires "more than a mere scintilla[,]" but the threshold "is not high." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).  The evidence cited by the ALJ, taken as a whole, could be accepted by a reasonable person as adequate to support the RFC findings set forth in the opinion.  The contrary evidence cited by Plaintiff in her brief is not sufficient to undermine this conclusion.  "The mere fact that there is evidence which might support a contrary conclusion is not sufficient to show error on the part of the ALJ." *Tammy F. v. Saul*, No. 20-1079-JWL, 2020 WL 7122426, at *7 (D. Kan. Dec. 4, 2020); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but we will not reweigh the evidence or substitute our judgment for the Commissioner's.")

### IV.  Conclusion

Accordingly, the decision of the Commissioner denying Plaintiff's application is AFFIRMED.  The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED this day 11th of January, 2022.


_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE